SCOTT ERIK ASPHAUG, OSB # 833674
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:22-cr-00135-IM |
| v. | **GOVERNMENT'S MOTION FOR CONTINUED PRETRIAL DETENTION** |
| **MANUEL ANTONIO SOUZA ESPINOZA,** | |
| **Defendant.** | |

The United States of America, through Scott Erik Asphaug, United States Attorney for the District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court to continue the defendant's pretrial detention.

The defendant, an armed drug dealer, is responsible for selling fentanyl that resulted in the death of a child. He is facing a sentence of between 20 years and Life in federal prison. The defendant is both a risk of non-appearance at future court proceedings and is a danger to the community and should be detained pending trial.

///

**Government's Motion for Pretrial Detention**                      Page 1

A.	**Factual and Procedural Summary.**

Defendant is facing three very serious federal felony crimes. He is currently charged with:

- Count 1: Possession with Intent to Distribute 40 grams or more of a mixture and substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B);

- Count 2: Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c); and,

- Count 3: Conspiracy to Distribute and Possess with the Intent to Distribute Fentanyl Resulting in Death, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

Count 1 carries a maximum sentence of 40 years' imprisonment and a mandatory minimum sentence of five (5) years imprisonment. Count 2 carries a maximum sentence of Life imprisonment and a mandatory minimum of five (5) years imprisonment, to run consecutively to any other sentence imposed. Count 3 carries a maximum sentence of Life imprisonment and a mandatory minimum of 20 years' imprisonment.

This investigation started in March 2022 with the tragic death of a young teenage kid who ingested a counterfeit M30 Oxycodone pill that was manufactured with fentanyl. Through an incredible investigative effort by the Portland Police Bureau's Narcotics and Organized Crime Unit, Homeland Security Investigations, and the Multnomah County District Attorney's Office, agents were able to identify defendant Espinoza as the originating source of the counterfeit M30 Oxycodone pill that started this tragic cascade of death and destruction and killed the victim.

///

The investigation revealed that defendant Espinoza sold counterfeit M30 Oxycodone pills to Person A, Person A then sold the pills to Person B, and Person B then sold the pill to the victim, who used the pill and tragically died.  On March 31, 2022, agents made the final link between the victim and defendant Espinoza.  Utilizing a cooperating defendant who had been buying counterfeit M30 pills from defendant Espinoza, agents set up a controlled purchase from the defendant.  The deal, which was for 1,000 counterfeit M30 pills was scheduled to take place at Cascade Station, near the Portland International Airport.  When the defendant showed up to complete the drug deal he was stopped and arrested.  Inside his car agents found approximately 1,000 counterfeit M30 prescription pills manufactured with fentanyl.  The defendant was also in possession of a loaded Glock .40 caliber handgun, with an extended magazine, which was found right next to him in the car.

When the defendant's vehicle was stopped there were four people in the car.  The defendant was the driver.  Portland Police Officers searched his vehicle.  Between defendant's driver seat and the center console they located a loaded Glock .40 caliber handgun, with extended magazine containing 15 rounds (depicted in Picture 1).  Under the front passenger seat officers located a plastic bag with approximately 1,000 counterfeit blue M30 pills, believed to be manufactured with fentanyl (depicted in Picture 2).  This is the same quantity of pills the cooperating defendant was expecting to purchase from defendant Espinoza that night.  The pills weighed approximately 114 grams.  In a fanny pack in the rear seat officers found another loaded Glock .40 caliber handgun (depicted in Picture 3) (a passenger in the rear seat claimed this gun was his).  The facts of the defendant's arrest are more fully laid out in the criminal complaint.

///

///

**Government's Motion for Pretrial Detention**  **Page 3**



(Picture 1 – Loaded gun between ESPINOZA's seat and center console)



(Picture 2 – Counterfeit M30 pills found under front passenger seat)

Late in the evening on March 31, 2022, the defendant was initially charged in a federal Criminal Complaint with: (1) Possession with Intent to Distribute 40 grams or more of a mixture and substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and, (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c).

///

///

**Government's Motion for Pretrial Detention**  **Page 4**

On April 1, 2022, defendant made his initial appearance on the criminal complaint and U.S. Magistrate Judge Jolie Russo detained him as both a danger to the community and risk of non-appearance.

On April 21, 2022, defendant was initially indicted for: (1) Possession with Intent to Distribute 40 grams or more of a mixture and substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and, (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c).  He waived his arraignment and a trial date was scheduled for June 28, 2022.

On May 17, 2022, the government received the toxicology results and autopsy report which concluded that Minor Victim 1 suffered an accidental death as a result of the "[t]oxic effects of fentanyl" that resulted from taking a counterfeit M30 pill.

On May 19, 2022, the federal grand jury returned a Superseding Indictment which charged defendant Espinoza, in Count 3, with engaging in a Conspiracy to Distribute and Possess with the Intent to Distribute Fentanyl Resulting in Death, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

The government seeks the defendant's continued detention as a danger to the community and a risk of nonappearance.

**B.     Applicable Law.**

    **1.     Rules of Evidence Do Not Apply at Detention Hearing**

The Federal Rules of Evidence do not apply in pretrial detention proceedings.  Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f).  Accordingly, both the government and the defense may

///

present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

2.     **Rebuttable Presumption of Detention**

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). All three of the defendant's criminal charges in this case independently create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant **might** engage in criminal activity to the

> detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union. **The committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

S. REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, **because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism**.

S. REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989). Were the presumption to vanish, "courts would be giving too little deference to

**Government's Motion for Pretrial Detention**                                                                                                          **Page 7**

Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id*. Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

 (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

  (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4)  the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

**C.  Factors Supporting Detention.**

The defendant should be detained pending trial as both a danger to the community and a risk of nonappearance. The defendant is a significant and armed drug dealer who is directly responsible for the death of, at least, one child. The defendant's criminal conduct clearly shows that he is a danger to the public and that he will not abide by the law. It would be unrealistic to hope he will follow any of the Court's future orders or that anything short of pretrial detention will prevent him from unleashing further death and destruction within the community.

  1.  **Nature and Circumstances of the Offense.**

The defendant was a merchant of death. The defendant distributed and possessed substantial quantities of counterfeit pills, made with fentanyl, for purposes of further distribution and the inevitable result of his drug dealing was the death of a child. The defendant was also an armed drug dealer who had a loaded firearm next to his seat when he showed up to complete a drug deal. The defendant's ties to the community did not prevent his drug dealing. The only thing that stopped the defendant's destructive conduct was a federal arrest and federal detention. The nature and circumstances of the offense warrant his pretrial detention.

Tragically, almost every week we read and hear about people who are overdosing and dying from fentanyl – kids and adults – who are buying and using counterfeit M30 prescription pills that are manufactured with fentanyl and then dying. As all of us have seen, drug traffickers are increasingly selling counterfeit M30 prescription pills that are manufactured with fentanyl

(N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide), a Schedule II controlled substance. These counterfeit pills are designed to replicate real 30 mg Oxycodone Hydrochloride pills, which are round, blue in color, and stamped with an "M" and "30" on them. Drug dealers regularly counterfeit these pills and, while attempting to replicate the round shape, the blue color, and the stamp of "M" and "30," they are instead manufacturing these pills with fentanyl as the active ingredient. Some of the users know the pills contain fentanyl, others do not. The death and destruction within our community resulting from the distribution and use of these counterfeit pills is truly astronomical and tragic.

Before his arrest defendant was an active drug dealer. We know from the cooperating defendant that the defendant was a very large drug dealer who has been receiving and selling significant amounts of fentanyl pills in the greater Portland, Oregon area. The cooperating defendant knew that the defendant had other customers, had "been in the game for a while," and that he made statements about having direct access to people who manufacture counterfeit pills and that the pills were fake and coming from Mexico.

In addition, this defendant possessed a loaded firearm in furtherance of his dangerous trade. Drug dealing is a dangerous business and drug dealers regularly arm themselves to protect themselves from being robbed of their drugs and illegally earned cash, as well as to potential use against law enforcement seeking to arrest them. The combination of substantial quantities of drugs and a loaded gun makes for a very dangerous, deadly, and combustible mix.

Large drug dealers like the defendant are exactly the people Congress warned us about and why they created the presumption of detention in these cases. Dealers like the defendant make their living from drug dealing and are prone to go back to it when they are released from custody. To release this defendant today risks him starting up again where he left off on March

31st – selling pills where every single pill sold could kill another person. This defendant is already responsible for at least one death, he should not be given the opportunity to kill anyone else. He should be detained.

    **2.**    **Weight of the Evidence.**

The weight of the evidence against the defendants is extremely strong and supports his continued detention. The defendant was caught, as a result of a law enforcement controlled buy, on his way to sell approximately 1,000 counterfeit pills to a person who was cooperating with law enforcement. He was also found in possession of a loaded firearm that was right next to him in the car – those charges alone carry a 10 year mandatory minimum sentence in prison. The government also has witnesses who will testify that the defendant was repeatedly selling counterfeit pills and directly responsible for selling the pill that killed Minor Victim 1. He should be detained.

    **3.**    **History and Characteristics of the Defendant.**

The history and characteristics of the defendant also warrants his pretrial detention. Although the defendant was living in Vancouver, Washington, and he has family in the area, his community and family ties have done absolutely nothing to prevent him from engaging in repeated and extremely serious criminal activity. Furthermore, there is nothing about these community ties sufficient to hold him in the area now that he is facing serious federal charges in which he is looking at a minimum of 25 years in federal prison.

Although the defendant does not have any felony convictions, he has repeatedly engaged in ongoing felonious conduct, conduct that has already caused the death of one child.

Prior to the instant offenses, in November of 2021, based upon allegations that the defendant and some of his associates were dealing drugs out of a house in Gresham, Oregon,

federal agents executed a search warrant on the residence and defendant Espinoza was one of four occupants found inside the house. Inside the residence agents also found over 12,000 counterfeit M30 pills believed to be manufactured with fentanyl, nine firearms (including two which had been modified to fire fully automatic), some cocaine and cocaine packaging material, body armor, a ballistic helmet, two suspected firearm suppressors, and over $35,000 in cash. The defendant told the agents that he did not have a legitimate job.

On March 31st, the instant case, the defendant was caught on his way to conduct a drug deal. At the time, the defendant possessed a loaded handgun in furtherance of his drug trafficking activities. We also know from the cooperating defendant that the defendant had other customers, had conducted additional drug transactions, and is regarding as a significant drug dealer who has direct access to people manufacturing pills in Mexico.

Additionally, the defendant has, since his arrest, been directly implicated as the source of supply for another drug overdose that occurred this year involving an adult male. That case is still being investigated and toxicology reports are pending.

The history and characteristics of the defendant necessitate pretrial detention.

4.   **Nature and Seriousness of the Danger to the Community.**

The defendant's drug dealing activities, by themselves, are extremely serious. The defendant is a merchant of death and destruction – he sells pills, for a profit, that kill people. The defendant's possession of a loaded firearm in connection with his drug dealing is also extremely serious. His offenses warrant his pretrial detention.

Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers pose to the community and their risk of going back to drug dealing even while on pretrial release. Drug dealers selling fentanyl, which is

killing large numbers of our fellow citizens, pose an unacceptable risk to the community and should be detained. There is simply no condition or combination of conditions that the Court will impose that will mitigate the risk that the defendant's distribution of fentanyl poses to the community. One death from fentanyl is far too much. Defendant should not be released and allowed to increase his body count. He should be detained.

Furthermore, the defendant's possession of a firearm while dealing drugs adds another level of danger to the mix. Firearms are "tools of the trade" for drug dealers and used to protect themselves, their drugs, and their ill-gotten gains. As a drug dealer, the defendant is a target for those who might want to rob him and this would potentially necessitate him using a firearm to respond to the threat. As a drug dealer, the defendant also has to deal with suppliers and customers who may also be armed and disagreements often arise between these groups resulting in shootings. As an armed drug dealer, the defendant also poses a significant risk to the safety of law enforcement officers who may try and arrest him and others in the community who may encounter him. The combination of drug dealing and possessing a firearm in furtherance of drug dealing is a dangerous, deadly, and combustible mixture that threatens the safety of the community. He should be detained.

## Conclusion

For the reasons set forth herein, we respectfully request that the Court continue to detain the defendant pending trial and find he poses an unacceptable risk of non-appearance at future court hearings and that he is a danger to the community.

We ask the Court to find that:

- All three charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendant as required.

- The defendant has not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendant's illegal trafficking of fentanyl, as well as his possession of a loaded firearm in furtherance of his drug trafficking activities, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendant were released.

- Due to the weight of the evidence and the defendant's personal history and characteristics, including the potential penalties he is facing on the current charges, no condition or combination of conditions will reasonably assure the appearance of the defendant at future court hearings as required if released from custody.

Dated: May 24, 2022.

Respectfully submitted,

SCOTT ERIK ASPHAUG
United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney

**Government's Motion for Pretrial Detention**                                                                 Page 14